**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| TERRY L.S. DORSEY, #193-579 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. GLR-12-285 |
| J. PHILLIP MORGAN, *Warden* | * | |
| J. DADDYSMAN, *Sergeant* | * | |
| Defendants | ****** | |

## MEMORANDUM

Pending is a prisoner civil rights suit filed by self-represented Plaintiff Terry L. S. Dorsey ("Dorsey") pursuant to 42 U.S.C. § 1983.   Defendants J. Phillip Morgan ("Morgan") and J. Daddysman ("Daddysman"), by their counsel, have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 8) and Plaintiff has filed a response (ECF No. 12).[1]  The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 (D. Md. 2011), as a hearing is deemed unnecessary.   After considering the pleadings, exhibits, and applicable law, the Court will grant Defendants' Motion for Summary Judgment by separate Order to follow.

## BACKGROUND

### A.  PLAINTIFF'S CLAIM

Plaintiff is currently confined at North Branch Correctional Institution ("NBCI").  In his Complaint, he alleges that during the time he was incarcerated at Western Correctional Institution ("WCI"), he was subjected to excessive force by Sergeant J. Daddysman.  ECF No. 1

---

[1]   Although provided an opportunity to submit an affidavit and verified exhibits with the Response (ECF No. 9), Dorsey has not done so.

at 4. He states that on March 15, 2011, Daddysman asked him to remove the red necklace [2] he was wearing because it is considered gang-related contraband. See id.[3] Dorsey states that he attempted to explain the necklace was a Native American religious item he was permitted to wear pursuant to a memorandum written by the prison chaplain,[4] but Daddysman became "belligerent." Id. [5] Dorsey ripped the necklace off, gave it to Daddysman, and requested to speak with a supervisor. Daddysman directed Dorsey to face the wall and attempted to handcuff him behind his back. See id. Dorsey, who relies on a cane to walk, protested. Dorsey asserts Daddysman took the cane from him, causing him to fall to the ground. See id. He further alleges Daddysman initially refused to take him to the medical unit after he fell, although he acknowledges Daddysman later transported him to the medical unit in a wheelchair. See id. As relief, Dorsey demands punitive damages of $50,000 and compensatory damages of $50,000 from Daddysman. Additionally, he seeks compensatory damages from Morgan of $50,000.

## B. DEFENDANTS' RESPONSE

Defendants have filed verified exhibits in support of their dispositive motion which provide as follows. On March 15, 2011, Dorsey was in the medical area of WCI wearing a bright red ribbon around his neck. Ex. 1, IGO Hearing Decision at 4, ¶ 4; Ex. 2, Notice of Inmate Rule Violation and Disciplinary Hearing at 1; Ex. 3, Department of Public Safety &

---

[2] Defendants refer to the necklace as a red ribbon. See ECF No. 8.

[3] Dorsey is a validated member of the "Bloods" criminal street gang. ECF No. 8, Ex. 3 at 3 (Internal Investigative Unit, Criminal Investigation Report).

[4] See ECF No. 12, Ex. B at 4.

[5] This incident was the subject of an Inmate Rule Violation and Disciplinary Hearing which found that Dorsey had 1) failed to prove that he owned a Native American medicine bag, and 2) failed to show any items were improperly removed from him. ECF No. 8, Ex. 3. The Administrative Law Judge also determined that contrary to Dorsey's assertions, the prison chaplain had never approved a religious artifact such as a Native American medicine bag to be kept in Dorsey's possession. ECF No. 8, Ex. 1 ¶ 14; See also ECF No. 12, Ex. B (Memorandum from Galen Beitzel, Chaplain generally explaining Native American medicine bags).

Correctional Services Internal Investigative Unit Criminal Investigation Report at 3, ¶ 3. Daddysman,[6] then assigned to the medical area, instructed Dorsey to remove his red ribbon because it is considered gang-related and banned within the prison system.  Dorsey became disruptive.  ECF No. 8, Ex. 1 at 4, ¶¶ 6 and 7; Ex. 2 at 1; Ex. 3 at 3, ¶ 3; Ex. 4, DPSCS Manual 2 entitled "Inmate Personal Property" at 3, IV(A)(3)(b).

Dorsey attempted to walk away towards the entrance of the medical area where there were other inmates.  Ex. 1 at 4, ¶ 7; Ex. 2 at 1; Ex. 5, WCI Information Report (prepared and signed by George M. Everett, CO II).  Daddysman ordered Dorsey to return.  When Dorsey failed to comply, Daddysman directed him back into the medical facility, placing his hand on Dorsey's shoulder.  Ex. 2 at 1.  Dorsey removed his red ribbon, causing it to break loose from his neck.  Ex. 1 at 4, ¶ 8; Ex. 2 at 1-2; Ex. 3 at 3, ¶ 3.

Daddysman conducted a pat-down of Dorsey and asked him to face the wall.  Ex. 2 at 2; Ex. 5.  When ordered to raise his hands and place them on the wall, Dorsey did so, holding his cane up off the floor in one of his hands.  Ex. 2 at 2; Ex. 3 at 3, ¶ 3.  Daddysman attempted to take Dorsey's cane, which he was not using for support at that time.  Ex. 2 at 2.  Dorsey initially resisted, but then released the cane and threw himself to the floor.  Ex. 2 at 2; Ex. 3 at 3, ¶ 3; Ex. 5.  Correctional Officer George M. Everett, who observed the situation, reported that Dorsey threw himself to the ground and caught himself with his hands.  Ex. 5.  Daddysman took Dorsey to a secure holding cell.  Ex. 2 at 2.  Later Dorsey was brought for a medical evaluation in a wheelchair because, according to Daddysman's report, he refused to walk on his own.  Ex. 2 at 2; Ex. 3 at 3, ¶ 3; Ex. 5.

---

[6] Defendants' counsel was unable to obtain a sworn declaration from Daddysman, who has been deployed for military service.  ECF No. 8 at 3.

At the Inmate Grievance Hearing, it was determined there were other inmates in the vicinity of the incident.  Ex. 1 at 4, ¶ 7.  Daddysman's incident report states that after Dorsey stood up, he began to seek the support of the approximately 18 inmates in the immediate area by shouting that he had been pushed to the ground.  Ex. 2 at 2.  During this time, Dorsey continued to cause a disruption by yelling at other prisoners in the area.  See id.

## DISCUSSION

### A.  STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); see Celotex Corporation v. Catrett, 477 U.S. 317, 323–25 (1986).  In reviewing a motion for summary judgment, the court views the facts in a light most favorable to the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  See Matsushita Electric Industrial Corporation v. Zenith Radio Corporation, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247–48.

A "material fact" is a fact that might affect the outcome of a party's case.  Id. at 248; JKC Holding Co. v. Washington Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>Hooven–Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. <u>Anderson</u>, 477 U.S. at 248. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. <u>See</u> <u>Celotex</u>, 477 U.S. at 324.

## B. ANALYSIS

### 1. EXCESSIVE FORCE

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6–7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. <u>See</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986). Absence of significant injury alone is not dispositive of a claim of excessive force. <u>See</u> <u>Wilkens v. Gaddy</u>, _ U.S. _, 130 S.Ct. 1175, 1177 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. <u>See</u> <u>id</u>.

"When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective [standard], a court may allow an inmate's claim to go to the jury only if it concludes

that the evidence viewed in the light most favorable to the claimant, 'will support a reliable inference of wantonness in the infliction of pain.'"  Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (quoting Whitley, 475 U.S. at 322).  Although a court may not ordinarily determine credibility between the parties, Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991), "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion of summary judgment."  Smith v. Ozmint, 578 F.3d 246, 254 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

## 1.  CLAIM AGAINST SERGEANT DADDYSMAN

It is undisputed that Daddysman was enforcing a prison regulation prohibiting gang-related paraphernalia by ordering Dorsey to remove his red ribbon.  Dorsey acknowledges that he "ripped" off the necklace.  Dorsey did not immediately comply with the order, however, because he believed he was authorized to wear the necklace for religious reasons.  Notably, as the Administrative Law Judge later concluded, Dorsey was not authorized to possess this property.  Further, Dorsey does not dispute the proximity of other inmates during the encounter, his actions to call the incident to their attention, or the potential for disrupting prison security.  Dorsey's cane was removed from him in order to effect handcuffing and to limit any further disruption.  The parties dispute whether Dorsey lost his balance when the cane was taken and fell or, in fact, threw himself to the ground.  After Dorsey stood up, he was taken to a holding cell and then escorted by Daddysman to the medical unit.[7]  Dorsey does not allege or provide any evidence that he required immediate emergency attention after the fall.[8]  In light of the presence

---

[7]   The medical unit is designated as a "security sensitive area."  ECF No. 12, Ex. A at  5  ¶ 15.

[8]   The record does not indicate how much time elapsed between Dorsey's fall and when he was taken to the medical unit.  The omission is not material to the outcome of this case.

of other inmates and the potential for disruption to orderly prison administration, the decision to temporarily remove Dorsey from the medical area to a holding cell was neither malicious nor sadistic.   The actions were consistent with maintaining prison discipline and security. Accordingly, Defendant Daddysman is entitled to summary judgment in his favor as a matter of law.

### 2.   CLAIM AGAINST WARDEN MORGAN

Dorsey does not claim that Morgan, Warden at WCI, was personally involved in the March 11, 2011 encounter.   In his response, Dorsey asserts the Warden "dismissed the [administrative] complaint . . . without any evidence to support anything the officer claimed occurred. . . ."   ECF No. 12 at 5.[9]   Dorsey's claim against Morgan is based on supervisory liability, or *respondeat superior*.   It is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims.   See Love–Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983).   Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"   Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (citing Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)).   Supervisory liability under § 1983 must be supported with evidence: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the

---

[9]   Morgan's response to Dorsey's Administrative Remedy Procedure ("ARP") request is not part of the record before this Court.  See ECF No. 1 at Part II.  Morgan's failure to approve relief sought under an ARP does not state a cognizable civil rights claim.  The Constitution creates no entitlement to grievance procedures or access to such procedures voluntarily established by a state.  See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).  Plaintiff's dispute over his ARP does not implicate a constitutional claim cognizable under § 1983.

supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).  There is no evidence Morgan had actual or constructive knowledge that Daddysman, or any other correctional officer, acted in a way to pose an unreasonable risk of injury to Dorsey.  Consequently, Warden Morgan is entitled to dismissal as a matter of law.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss or for Summary Judgment will be granted.  Judgment will be entered in favor of Defendants.[10]  A separate Order follows.

November 15, 2012

/s/
_____
George L. Russell, III
United States District Judge

---

[10]   Dorsey has also filed a Motion for Appointment of Counsel (ECF No. 14).  A district court judge has discretion to appoint counsel  if an indigent plaintiff presents exceptional circumstances.  See 28 U.S.C. § 1915(e) (1); see also Cook v. Bounds, 518 F.2d 779,780 (4th Cir. 1984).  Whether such circumstances exist depends on 1) the type and complexity of the case, and 2) the abilities of the litigant.  See Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. District Court, 490 U.S. 296, 298 (1989); Gordon v. Leake, 574 F.2d 1147, 1153 (4th Cir. 1978).  No exceptional circumstances are presented here.  For this reason, the Motion will be denied.